IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

SECOND RICHFIELD MOTORS, LLC )
d/b/a LUTHER KIA OF BLOOMINGTON )
                                                )
      Plaintiff, )
                                                )
v. )   Case No.:
                                                )
KIA MOTORS AMERICA, INC. )
                                                )
      Defendant )
                                                )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Second Richfield Motors, LLC, d/b/a Luther Kia of Bloomington ("Luther") brings this Complaint against the Defendant, Kia Motors America, Inc. ("KMA"), and hereby alleges as follows:

### Parties

1.    Plaintiff, Luther, is a Limited Liability Company organized and existing under the laws of Minnesota with its principal place of business located at 1701 American Boulevard West, Bloomington, MN 55431. Luther's sole member is Luther Family LLLP.

2.    Luther Family LLLP, is a limited liability limited partnership consisting of one general partner and fourteen limited partners. The general partner is Luther Family Holdings Ltd., which has a principle place of business in St. Louis Park, Minnesota, is organized under the laws of Minnesota, and is a citizen of Minnesota. The limited partners are:

C. David Luther who is a citizen of Minnesota;

1

R. Dan Luther who is a citizen of Minnesota;

R. Dan Luther 1993 Trust for Rudy Ryan Luther whose Trustees are C. David Luther and Rudy Ryan Luther, both of whom are citizens of Minnesota;

R. Dan Luther 1993 Trust for Melissa Claire Luther whose Trustees are C. David Luther and Rudy Ryan Luther, both of whom are citizens of Minnesota;

C. David Luther 1993 Trust for Blake Luther, whose Trustees are R. Dan Luther and Anne F. Luther, both of whom are citizens of Minnesota;

C. David Luther 1993 Trust for Lauren Luther, whose Trustees are R. Dan Luther and Anne F. Luther, both of whom are citizens of Minnesota;

C. David Luther 1993 Trust for Charles Luther, whose Trustees are R. Dan Luther and Anne F. Luther, both of whom are citizens of Minnesota;

Rudy R. Luther who is a citizen of Minnesota;

Melissa Luther who is a citizen of Washington D.C.;

Blake Luther who is a citizen of Michigan;

Lauren Luther who is a citizen of Minnesota;

Charles Luther who is a citizen of Minnesota;

C. David Luther Art V Trust whose Trustees C. David Luther, R. Dan Luther and Anne Luther, all of whom are citizens of Minnesota; and

R. Dan Luther Art V Trust whose Trustees are R. Dan Luther, C. David Luther and Rudy R. Luther, all of whom are citizens of Minnesota.

3. Luther is a new motor vehicle dealer as defined by Minn. Stat. § 80E.03(3) and operates a KMA franchised motor vehicle dealership, where it sells and services KMA products pursuant to a franchise, as defined by Minn. Stat. § 80E.03(8).

4. Defendant, KMA, is a corporation organized and existing under the laws of California with its principal place of business located in Irvine, California.

5. KMA is a manufacturer and distributor, as defined by Minn. Stat. §§ 80E.03(4)-(5) as it manufactures *inter alia* KMA vehicles and sells, and offers to sell, those vehicles to new motor vehicle dealers (including Luther) in this State.

## Jurisdiction

6. This court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1) in that there is complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

7. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) in that jurisdiction is founded solely on the basis of diversity, and KMA, by virtue of its systematic and continuous business contacts in this district, resides in this district.

## Facts Applicable to All Claims

### KMA's Area of Primary Responsibility

8. As a part of its Dealer Sales and Services Agreement ("Dealer Agreement") with KMA, Luther is authorized to sell and service KMA vehicles. The Dealer Agreement governs the contractual relationship between KMA, a motor vehicle manufacturer, and Luther, a licensed motor vehicle dealer, pursuant to which Luther is authorized to transact business pertaining to new Kia vehicles. (A copy of the combined Dealer Agreement & Standard Provisions is attached as Exhibit A).

9. KMA refers to a dealer's assigned area by which it measures the dealer's sales effectiveness as its Area of Primary Responsibility ("APR").

10. KMA measures its dealer's sales effectiveness (i.e. performance) based on a calculation of a dealer's Dealer Sales Effectiveness ("DSE"). Under the DSE formula, a

dealership's overall retail new vehicle sales are compared against the total sales of same-segment vehicles within the dealer's APR. This makes the accurate assignment of a dealership's APR critical for the DSE measurement to be fair and meaningful.

11. Sales effectiveness measurements are a tool KMA uses to determine dealer performance, establish objectives for contests and sales incentives, and is a basis used in determining dealer compliance with the sales obligations of its Dealer Agreement. Meaning, a dealer can face significant negative effects, including termination, for failure to meet its sales performance responsibilities under the Dealer Agreement. *See e.g., Exhibit A: Dealer Sales and Services Agreement, Art. 12, Sec. C(3).*

12. Luther's APR currently consists of 144 census tracts ("existing APR").

13. Luther is an effective dealer of Kia vehicles and sells vehicles throughout its Existing APR. Luther has also invested significantly in its sales and service facilities, employees, and inventory of parts and equipment in an effort to adequately serve the customers in its Existing PMA.

### KMA's Change to Luther's Area of Sales Effectiveness

14. By letter dated April 3, 2019, KMA notified Luther that it had reviewed the dealership's location relative to other KMA dealerships in the surrounding area and concluded that it would make a change to Luther's KMA. (A copy of the letter and referenced attachments is attached as Exhibit B).

4

15. Significantly, KMA's letter revealed that KMA intended to add twenty-seven (27) additional census tracts to Luther's Area of Primary Responsibility.[1]

16. By letter dated April 11, 2019, Luther responded to KMA's letter and proposed changes to explain that the twenty-seven (27) census tracts KMA intended to add to Luther's APR represented areas which should not be included in Luther's APR once relevant traffic patterns and geographical barriers effecting customer behavior were properly considered.

17. Specifically, each census tract KMA intended to add to Luther's APR were separated from Luther's dealership by the Minnesota River and represented a populace where Luther did not enjoy a competitive sales advantage. Luther requested that KMA provide additional information and analysis to justify the reasoning for the proposed changes. It is well established that the existence of rivers and bridges represent a psychological barrier that effect consumer traffic patterns. (A copy of Luther's April 11, 2019 letter is attached as Exhibit C).

18. By letter dated June 6, 2019, KMA responded to Luther's letter and asserted that the additional census tracts were assigned to Luther on the basis that the tracts were allegedly closer by driving distance to Luther's dealership than any of Kia dealership. Despite Luther's objections, KMA intends to modify Luther's Dealer Agreement and adopt

---

[1] The Letter also gave notice that KMA intended to remove two (2) census tracts within Luther's APR which were greater than 25 miles in drive distance from Luther's dealership location. According to the letter, KMA policy dictates that dealers not be assigned a census tract over 25 miles from their dealership. For the purposes of this Compliant, Luther does not object or challenge the removal of these two census tracts from its APR.

the proposed APR effective July 14, 2019. (A copy of KMA's June 6, 2019 letter is attached as Exhibit D).

### Minnesota's Change in Area of Sales Effectiveness Requirements

19. Minnesota Statute Chapter 80E is titled "Motor Vehicle Sale and Distribution" and governs the relationship between manufacturers/distributors and dealers. The Chapter governs a wide variety of behavior including a manufacturer's decision to change a dealer's area of sales effectiveness. *See Minn. Stat.* § 80E.13(p) (2018).

20. State statutes governing the relationship between manufacturers and dealers are not a new creation. Minnesota's statutory scheme was enacted in 1981. In fact, the Supreme Court has described the provisions as necessary due to the "disparity in bargaining power between automobile manufacturers and their dealers". *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 439 U.S. 96, 100 (1978). Statutes, such as Minnesota's, are designed "to protect retail car dealers from perceived abusive and oppressive acts by the manufacturers". *Id.*

21. Minnesota Statute 80E.13(p) makes it unlawful and an unfair practice for a manufacturer to engage in the following practice:

> (p) assign or change a dealer's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market. The manufacturer, distributor, or factory branch must provide at least 90 days' notice of the proposed change. The change may not take effect if the dealer commences a civil action within the 90 days' notice period to determine whether the manufacturer, distributor, or factory branch met its obligations under this section. The burden of proof in such an action shall be on the manufacturer or distributor. In determining at the evidentiary hearing whether a manufacturer, distributor, or factory branch has assigned or changed the dealer's area of sales effectiveness or is proposing to assign or change the dealer's area of sales

effectiveness arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market, the court may take into consideration the relevant circumstances, including, but not limited to:

(1) the traffic patterns between consumers and the same line-make franchised dealers of the affected manufacturer, distributor, or factory branch who are located within the market;

(2) the pattern of new vehicle sales and registrations of the affected manufacturer, distributor, or factory branch within various portions of the area of sales effectiveness and within the market as a whole;

(3) the growth or decline in population, density of population, and new car registrations in the market;

(4) the presence or absence of natural geographical obstacles or boundaries, such as rivers;

(5) the proximity of census tracts or other geographic units used by the affected manufacturer, factory branch, distributor, or distributor branch in determining the same line-make dealers' respective areas of sales effectiveness; and

(6) the reasonableness of the change or proposed change to the dealer's area of sales effectiveness, considering the benefits and harm to the petitioning dealer, other same line-make dealers, and the manufacturer, distributor, or factory branch.

See Minn. Stat. § 80E.13(p) (2018).

22.     Independent of the clear language of Minn. Stat. § 80E.13(p), which expressly allows for a civil action, Minn. Stat. § 80E.17 provides a right of action for any dealer that is harmed, or would be harmed, by a manufacturer's violation of the Minnesota dealer franchise act, including section 80E.13(p). It states:

Notwithstanding the terms of any franchise agreement or waiver to the contrary, any person whose business or property is injured by a violation of sections 80E.01 to 80E.17, or any person injured because of the refusal to accede to a proposal for an arrangement which, if consummated, would be in violation of sections 80E.01 to 80E.17, may bring a civil action to enjoin

further violations and to recover the actual damages sustained, together with costs and disbursements, including reasonable attorney's fees.

*Minn. Stat.* § 80E.17 (2018).

### KMA's Violation of Minn. Stat. § 80E.13(p)

23.    KMA's proposed change to Luther's assigned APR (i.e. its area of sales effectiveness) is unlawful and unfair under the Minnesota Motor Vehicle Sales & Distribution Act as the proposed changes will assign census tracts to Luther arbitrarily and without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market.

24.    Among other failures, KMA's proposed assignments fail to consider existing traffic patterns, the current pattern of new vehicle sales and registrations in those tracts, the population changes in the market, the presence (and absence) of natural geographic obstacles or boundaries, such as rivers, and the benefits and harm KMA's changes will make on the affected dealers.

25.    Further, KMA's unlawful and unfair change to Luther's APR will result in substantial damage to Luther.

26.    The addition of the proposed census tracts to Luther's area of sales effectiveness will negatively affect Luther's sales performance, will increase its sales responsibilities under periodic sales objective programs, and will increase its planning volume and, potentially, its future facility size requirements which correspondence with its planning volume (i.e. sales volume).

## Count I (Violation of Minn. Stat. § 80E.13(p))

27. Luther realleges and incorporates paragraphs 1-26 as if set forth fully herein.

28. Minnesota Statute § 80E.13(p) makes it unlawful and unfair for KMA to change or assign a dealer's area of sales effectiveness arbitrarily or without due regarding to the present pattern of motor vehicle sales and registrations within the dealer's market.

29. By letter dated April 3, 2019, KMA gave notice of its intent to change Luther's assigned APR.

30. If adopted, Luther's APR will include additional census tracts which are unlawful and unfair once consideration is given to multiple pertinent factors affecting motor vehicle sales and registrations in Luther's market, including but not limited to:

   i. The traffic patterns between consumers and the same line-make franchised dealers of the affected manufacturer, distributor, or factory branch who are located within the market;

   ii. The pattern of new vehicle sales and registrations of the affected manufacturer, distributor, or factory branch within various portions of the area of sales effectiveness and within the market as a whole;

   iii. The growth or decline in population, density of population, and new car registrations in the market;

   iv. The presence or absence of natural geographical obstacles or boundaries, such as rivers;

   v. The proximity of census tracts or other geographic units used by the affected manufacturer, factory branch, distributor, or distributor branch in determining the same line-make dealers' respective areas of sales effectiveness; and

   vi. The reasonableness of the change or proposed change to the dealer's area of sales effectiveness, considering the benefits and harm to the petitioning dealer, other same line-make dealers, and the manufacturer, distributor, or factory branch.

31. Luther has the right to bring this claim pursuant to Minn. Stat. § 80E.13(p) and Minn. Stat. § 80E.17, which allows Luther to recover damages as well as its attorney's fees. Luther requests a judgment against KMA in the amount of its damages as well as its attorney's fees expended in pursuit of its claim.

### Count II (Declaratory Judgment of Area of Sales Effectiveness)

32. Luther realleges and incorporates paragraphs 1- 31 as if set forth fully herein.

33. An actual controversy exists between Luther and KMA as to whether KMA is acting lawfully and fairly, under Minn. Stat. § 80E.13(p), in changing the area of sales effectiveness (i.e. APR) assigned to Luther.

34. KMA has proposed to change Luther's APR in a manner which is arbitrary and without due regard to the present pattern of motor vehicle sales and registrations within Luther's market in violation of Minnesota law.

35. If adopted, Luther will be substantially harmed as a result of KMA's proposed change.

36. Luther seeks a declaratory judgment pursuant to Title 28, United States Code, § 2201, for the purpose of determining this question of actual controversy between the parties.

WHEREFORE, Luther demands a jury trial on all issues so triable and entry of a judgment against KMA:

(i) finding that KMA has violated Minnesota Statute Section 80E.13(p);

(ii) declaring the proposed change to Luther's APR to be unlawful and unfair;

(iii) awarding Luther its damages as well as attorney's fees and costs; and

(iv) such other and further relief that this Court deems just.

Dated: July 2, 2019

Respectfully Submitted,

Charles K. Maier, Esq. (MN#230315)
Eric V. Brown, Esq. (MN#393078)
GRAY, PLANT, MOOTY,
 MOOTY & BENNETT, P.A.
500 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 632-3000
Facsimile: (612) 632-4000
Charles.Maier@gpmlaw.com
Eric.Brown@gpmlaw.com

**AND**

Richard N. Sox, FL #982156
Micah A. Andrews, FL #117592
*Pro Hac Vice Applications Pending*
**BASS SOX MERCER**
2822 Remington Green Circle
Tallahassee, FL  32308
Telephone:  (850) 878-6404
Facsimile:  (850) 942-4869
RSox@dealerlawyer.com
MAndrews@dealerlawyer.com

**ATTORNEYS FOR PLAINTIFF**

GP:4837-0626-1147 v1